UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KELLY ALIECA JIMMERSON,

                              Plaintiff,

                                                                       Case # 16-CV-442-FPG

v.

                                                                        DECISION AND ORDER

NANCY A. BERRYHILL,[1]
ACTING COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

      Kelly Alieca Jimmerson ("Jimmerson" or "Plaintiff") brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner") that denied her application for Supplemental Security Income ("SSI") under Title XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

      Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 8, 15. For the reasons that follow, the Commissioner's motion is GRANTED and Plaintiff's motion is DENIED.

## BACKGROUND

      On April 11, 2012, Jimmerson applied for SSI with the Social Security Administration ("the SSA"). Tr.[2] 144-49. She alleged that she had been disabled since May 1, 1997 due to epilepsy, migraines, and memory problems. Tr. 159. On November 13, 2013, Jimmerson and a vocational expert ("VE") testified at a hearing before Administrative Law Judge David S.

---

[1]     Nancy A. Berryhill is now the Acting Commissioner of Social Security and is therefore substituted for Carolyn W. Colvin as the defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).
[2]     References to "Tr." are to the administrative record in this matter.

Lewandowski ("the ALJ"). Tr. 49-89. On March 3, 2014, the ALJ issued a decision finding that Jimmerson was not disabled within the meaning of the Act. Tr. 19-32. On April 4, 2016, the Appeals Council denied Jimmerson's request for review. Tr. 1-7. Thereafter, Jimmerson commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ

proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  20 C.F.R. § 404.1520(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work.  20 C.F.R. § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience.  *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

**DISCUSSION**

**I.     The ALJ's Decision**

The ALJ's decision analyzed Jimmerson's claim for benefits under the process described above.  At step one, the ALJ found that Jimmerson had not engaged in substantial gainful activity since the application date. Tr. 21.  At step two, the ALJ found that Jimmerson has the following severe impairments: mood and anxiety disorders, migraine headaches, and seizure-like spells likely related to mood disorder. *Id.*  At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any Listings impairment. Tr. 21-23.

Next, the ALJ determined that Jimmerson retained the RFC to perform a full range of work at all exertional levels but with nonexertional limitations. Tr. 23-31. Specifically, the ALJ found that Jimmerson must avoid hazards including heavy machinery and unprotected heights; cannot drive as a job duty; can understand, remember, and carry out simple instructions and perform simple tasks; can maintain a simple regular schedule; can occasionally learn simple new tasks and make simple decisions; and requires a low stress job, which means no fast paced production rate work, no or limited proximity to coworkers, and only occasional interaction with others. Tr. 23.

At step four, the ALJ indicated that Jimmerson has no past relevant work. Tr. 31.  At step five, the ALJ relied on the VE's testimony and found that Jimmerson can adjust to other work that exists in significant numbers in the national economy given her RFC, age, education, and work experience. Tr. 31-32. Specifically, the VE testified that Jimmerson could work as a housekeeping cleaner, mail clerk, and table worker. Tr. 32.  Accordingly, the ALJ concluded that Jimmerson was not "disabled" under the Act. *Id.*

**II.     Analysis**

Jimmerson argues that remand is required because: (1) the ALJ's RFC finding that she can maintain a "simple regular schedule" is not supported by substantial evidence; and (2) the ALJ failed to develop the record. ECF No. 8-1, at 16-23. These arguments are addressed below.

**I.      Maintaining a Simple Regular Schedule**

**A.     RFC**

Jimmerson argues that the ALJ's RFC finding that she could maintain a "simple regular schedule" is vague and inconsistent with the opinion of consultative examiner Renee Baskin, Ph.D. ("Dr. Baskin") that she is "moderately limited" in her ability to maintain a regular schedule. ECF No. 8-1, at 16-19.

RFC is defined as "what an individual can still do despite his or her limitations." *Desmond v. Astrue*, No. 11-CV-0818 (VEB), 2012 WL 6648625, at *5 (N.D.N.Y. Dec. 20, 2012) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)). To determine a claimant's RFC "the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis." *Id.* (citation omitted); 20 C.F.R. § 416.945(a). "An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations." *Desmond*, 2012 WL 6648625, at *5.

Here, Dr. Baskin opined, among other things, that Jimmerson "would have moderate limitations being able to . . . maintain a regular schedule." Tr. 275. The ALJ afforded "significant weight" to Dr. Baskin's opinion because the ALJ concluded that it was consistent with Dr. Baskin's examination and the examinations of Jimmerson's treating sources. Tr. 30. Both of these are valid reasons to afford significant weight to Dr. Baskin's opinion. *See* 20 C.F.R. §§

416.927(c)(3) (the SSA will give more weight to an opinion supported by relevant evidence), (c)(4) (the SSA will give more weight to an opinion that is consistent with the record as a whole). Moreover, "[i]t is well established that an ALJ may rely on the medical opinions provided by State agency consultants and that those opinion[s] may constitute substantial evidence." *Barber v. Comm'r of Soc. Sec.*, No. 6:15-CV-0338 (GTS/WBC), 2016 WL 4411337, at *7 (N.D.N.Y. July 22, 2016) (citations omitted).

The ALJ's RFC determination is nearly identical to Dr. Baskin's opinion. Tr. 23, 274-75. Jimmerson takes issue, however, with the variation between Dr. Baskin's opinion that she is "moderately limited" in her ability to maintain a regular schedule and the ALJ's conclusion that she could maintain a "simple regular schedule." It is not required, however, that the RFC assessment "perfectly correspond" with any of the medical source opinions that the ALJ cites in his or her decision. *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citation omitted) (summary order). Rather, the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Id.*

A claimant's ability to maintain a regular schedule falls within the category of concentration and persistence. *Lowry v. Comm'r of Soc. Sec.*, No. 15-CV-1553 (GTS/WBC), 2017 WL 1290685, at *4 (N.D.N.Y. Mar. 16, 2017), *report and recommendation adopted*, No. 15-CV-1553 (GTS/WBC), 2017 WL 1291760 (N.D.N.Y. Apr. 6, 2017) (citing SSA Form SSA-4734). "The Second Circuit has held that a moderate limitation in the area of concentration, persistence, or pace would not necessarily preclude the ability to perform unskilled work." *Id.* (citations omitted). Here, all of the jobs that the ALJ identified at step five are unskilled positions, which is consistent with Dr. Baskin's opinion that Jimmerson is moderately limited in maintaining a regular schedule. Tr. 32. The ALJ also limited Jimmerson to understanding, remembering, and carrying

6

out simple instructions, performing simple tasks, occasionally learning simple new tasks and making simple decisions, and a low stress job with limited interaction with others, all of which are consistent with moderate limitations in maintaining a regular schedule.  Tr. 23; *see also Lowry*, 2017 WL 1290685, at *4 ("[T]he ALJ's RFC limited Plaintiff to simple, routine tasks, which accounted for a possible 'moderate' limitation in maintaining a routine.")

Jimmerson argues that it is unclear exactly what a "simple regular schedule" entails, and that this is problematic because "being absent from work as little as twice per month renders a claimant unemployable."  ECF No. 8-1, at 18.  At Jimmerson's hearing, however, the ALJ specifically asked the VE to assume an individual who, among other things, would require a "simple, regular schedule, meaning five days a week at the same times.  For example, Monday through Friday, from eight until four."  Tr. 85.  Thus, it was clear to the VE exactly what kind of schedule this individual would be able to keep when she testified regarding available jobs.

Jimmerson also contends that the ALJ may have been "conflating topics" and meant that Jimmerson "was capable of maintaining a regular schedule at a job involving simple tasks."  ECF No. 8-1, at 18.  It is clear, however, that the ALJ separated these limitations.  At the hearing, the ALJ asked the VE to assume an individual who would require a simple regular schedule *and* who could perform simple tasks and occasionally learn new simple tasks. Tr. 85.  Similarly, the ALJ's RFC determination indicated that Jimmerson could maintain a simple regular schedule *and* perform simple tasks and occasionally learn new simple tasks.  Tr. 23.

Accordingly, for the reasons stated, the Court finds that the RFC determination that Jimmerson could maintain a "simple regular schedule" is supported by substantial evidence.  This limitation is consistent with Dr. Baskin's opinion, which the ALJ was entitled to rely on and to

afford significant weight, with the remainder of the RFC assessment, and with the unskilled jobs identified at step five.

### B. Step Five

Jimmerson also asserts that the ALJ's step five finding is not supported by substantial evidence because the hypothetical question that he posed to the VE contemplated an individual who could maintain a "simple regular schedule." *Id.*

At step five, the ALJ must determine whether the claimant can adjust to other work for which there are a significant number of jobs in the national economy. 20 C.F.R. § 416.960(c). An ALJ can make his or her step five determination by adducing VE testimony. *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014). The ALJ may pose a hypothetical question to the VE and rely on the VE's response "as long as there is substantial record evidence to support the assumption[s] upon which the [VE] based his [or her] opinion and accurately reflect the limitations and capabilities of the claimant involved." *Id.* (quotation marks and citations omitted).

As discussed above, the ALJ's determination that Jimmerson can maintain a "simple regular schedule" is supported by substantial evidence. After reviewing the transcript of Jimmerson's hearing, the Court finds that the hypothetical questions posed to the VE adequately reflected the RFC determination and that the ALJ was entitled to rely on the VE's responses. Tr. 85-81. Accordingly, the ALJ's step five analysis was supported by substantial evidence.

### II. Failure to Develop the Record

Jimmerson also argues that the ALJ failed to develop the record. ECF No. 8-1, at 19-23. Specifically, Jimmerson asserts that the ALJ should have obtained an RFC assessment from her treating physician Lixin Zhang, M.D. ("Dr. Zhang") because the opinion of consultative examiner Donna Miller, D.O. ("Dr. Miller") was rendered stale by "subsequent clinical developments." *Id.*

For the reasons that follow, the Court finds that the ALJ did not err and that he was entitled to rely on Dr. Miller's opinion.

The ALJ has an affirmative duty to develop the administrative record due to the "essentially non-adversarial nature of a benefits proceeding." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996). Specifically, the ALJ must "make every reasonable effort" to develop a claimant's "complete medical history" for at least the 12 months preceding the month in which the claimant applied for benefits. 20 C.F.R. § 416.912(b). Remand is warranted if the ALJ fails to fulfill his or her duty to develop the record. *Pratts*, 94 F.3d at 39. On the other hand, where there are no "obvious gaps" in the record and a "complete medical history" exists, the ALJ is not obligated to seek additional evidence. *Rosa*, 168 F.3d at 79 n.5.

The ALJ may be required to develop the record if it lacks a relevant medical source statement that he or she may rely on to assess the claimant's RFC. The ALJ may not rely on "medical source opinions that are conclusory, stale, and based on an incomplete medical record" as substantial evidence to support his or her RFC finding. *Camille v. Colvin*, 104 F. Supp. 3d 329, 343-44 (W.D.N.Y. 2015), *aff'd*, 652 F. App'x 25 (2d Cir. 2016) (citation omitted). A medical opinion may be stale if it does not account for the claimant's deteriorating condition. *See, e.g.*, *Jones v. Comm'r of Soc. Sec.*, No. 10 CV 5831(RJD), 2012 WL 3637450, at *2 (E.D.N.Y. Aug. 22, 2012) (finding that the ALJ should not have relied on a medical opinion in part because it "was 1.5 years stale" as of the plaintiff's hearing date and "did not account for her deteriorating condition"); *Girolamo v. Colvin*, No. 13-CV-06309 (MAT), 2014 WL 2207993, at *7-8 (W.D.N.Y. May 28, 2014) (finding that the ALJ should not have afforded great weight to medical opinions rendered before plaintiff's second surgery).

"Although the Social Security regulations express a clear preference for evidence from the claimant's own treating physicians over the opinion rendered by a consultative examiner, . . . the absence of a medical source statement from [the] claimant's treating physicians" is not necessarily "fatal to the ALJ's determination." *Swiantek v. Comm'r of Soc. Sec.*, 588 F. App'x 82, 84 (2d Cir. 2015) (summary order) (citing *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33-34 (2d Cir. 2013) (reasoning that the SSA's regulations suggest that "remand is not always required when an ALJ fails in his duty to request opinions, particularly where . . . the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity.")); *see also* 20 C.F.R. § 416.912 (effective June 13, 2011 to Mar. 25, 2012). Whether a treating physician's opinion is needed "hinges on the circumstances of the particular case, the comprehensiveness of the administrative record, and whether the record, although lacking the opinion of the treating physician, was sufficiently comprehensive to permit an informed finding by the ALJ." *Hooper v. Colvin*, 199 F. Supp. 3d 796, 814 (S.D.N.Y. 2016) (alterations, quotation marks, and citation omitted).

Here, Jimmerson argues that Dr. Miller's opinion was rendered stale by subsequent treatment notes indicating that she suffered from "seizure-like spells" related to an underlying mood disorder instead of epileptic seizures. ECF No. 8-1, at 22-23. Specifically, Dr. Zhang suspected that "the underlying mood disorder, possibly bipolar disorder, plays a role for the . . . seizures." Tr. 346. Similarly, Alanna Castaldo, RPA-C ("PA Castaldo") opined on two occasions that Jimmerson was not suffering from "true seizures" but "spells related to underlying mood disorder." Tr. 352, 382. There is no evidence, however, that Jimmerson's condition deteriorated after Dr. Miller's examination. The treatment notes do not indicate, for example, that her seizures became more frequent or more intense or that her doctors adjusted her prognosis. The treatment

notes merely illuminate the potential cause of her seizures. The ALJ clearly was aware that mood disorder may affect Jimmerson's seizures when he determined her RFC, because the ALJ summarized the above treatment notes in his decision and specifically noted Dr. Zhang and PA Castaldo's opinions. Tr. 27-29. Moreover, the ALJ found at step two that Jimmerson had the severe impairment of "seizure-like spells likely related to mood disorder." Tr. 21.

Additionally, it is clear that Dr. Miller was fully aware of Jimmerson's seizures. Her report summarized Jimmerson's seizure history and symptoms in detail and diagnosed her with seizure disorder. Tr. 276, 278. Based on her examination, Dr. Miller opined that Jimmerson should "avoid operating heavy machinery or working in unprotect[ed] heights given her recent seizure." Tr. 279. The ALJ afforded "significant weight" to Dr. Miller's opinion because he found it consistent with Dr. Miller's examination and with "the relatively unremarkable examinations performed by [Jimmerson]'s treating physicians." Tr. 30; *see* 20 C.F.R. §§ 416.927(c)(1) (the SSA will give more weight to an opinion from a medical source who examined the claimant), (c)(3) (the SSA will give more weight to an opinion supported by relevant evidence), (c)(4) (the SSA will give more weight to an opinion that is consistent with the record as a whole).

Moreover, as discussed previously, the ALJ also afforded "significant weight" to Dr. Baskin's opinion. Tr. 30 (citing Tr. 272-75). Dr. Baskin was also aware of Jimmerson's seizures as she noted that Jimmerson "has a history of multiple hospitalizations both emergency and inpatient for a seizure disorder" and that Jimmerson needs help showering or bathing because "[she] could fall from seizure." Tr. 272, 274.

Although the administrative record in this case lacks an RFC assessment from a treating physician, the Court finds that this did not create any "obvious gaps" in the record that the ALJ was required to fill. *See Swiantek*, 588 F. App'x at 84 ("Given the extensive medical record before

11

the ALJ in this case, we hold that there were no 'obvious gaps' that necessitate remand solely on the ground that the ALJ failed to obtain a formal opinion from one of [the claimant]'s treating physicians regarding the extent of [the claimant]'s impairments[.]") (citation omitted); *cf. Riley-Tull v. Berryhill*, No. 16-CV-151-FPG, 2017 WL 2821559, at *3, 5 (W.D.N.Y. June 30, 2017) (remanding where the ALJ rejected the only medical opinions as to the claimant's physical capabilities and the record lacked any treating physician assessment as to the claimant's ability to work). Rather, the ALJ was entitled to rely on Dr. Miller and Dr. Baskin's medical opinions and his RFC assessment is nearly identical to those opinions. Thus, the Court finds that the RFC assessment is supported by substantial evidence and that the ALJ did not fail to develop the record.

## CONCLUSION

For the reasons stated, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 15) is GRANTED, and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 8) is DENIED. Plaintiff's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: July 25, 2017
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court